United States v. Grayson Enterprises, Inc. There are a number of, I think, important issues in this case. It's difficult to decide how to order them in terms of importance. One of them is sometimes viewed as a structural error, and that has to do with the right to conflict-free counsel. The government has argued that even though there was clearly a breach of the Rule 44 requirement to determine that counsel really is free of conflict, that there was no evident potential or actual conflict of interest. And you aren't arguing that a breach of the Rule 44 alone gives your client a new trial, are you? No. The Colonia case that the government cited, I think, is very instructive on that. But it also is instructive in that we don't need to go all the way to a 2255 in this context when you have clear record evidence of particularly what they characterized as a structural error even in this context where you see a pervasive indication that there is an obvious conflict. And in this case, there couldn't be a more clear structural indication of that conflict. Can you explain, please, what you think the actual conflict is based on the joint representation? Well, you have a case that's built on this man Geyer. It's built on Geyer. The indictment goes back to 2008, apparently before the owner of Grayson had ever even met Geyer. The indictment charges that. Some of the counts in which Grayson is pleading guilty relate to accusations during the period where he's married to somebody else for years, having children with somebody else. So that it's clearly an attempt to draw in, not charge the former company that most of the conduct related to, but the later threat to bring in the later company. But what's the actual conflict? Factually, it may be a different time period. That's a separate question. What is the actual conflict with the same attorney representing both the individual and your client corporation? You'd have no defense of the corporation, none. There's never a defense of the primary. The primary defense of any corporation is, look, this guy's a rogue. He went off on his own. He was doing it before. He went off. He did these rogue things. He made money on it. There's no, it's simply, you can't show any indication that it had any benefit whatsoever for Grayson Enterprises. He did it on his own. He did it for his own purposes. And that's the bottom line. And it goes beyond that. Not only is this argument not even made, counsel doesn't even make a Rule 29 argument to bring the point to the court's attention. Then counsel calls as a witness the girlfriend in order to present evidence that does nothing but apparently be used by the government in its brief. It's an absolute obvious conflict. As soon as a new attorney, a regulated practicing criminal attorney comes into the case, recognizes  How would calling his girlfriend, who was listed as president of your client, be an actual conflict? Maybe it wasn't the best strategic decision. That's a separate question again. But how would it be an actual conflict for your client, for her to have been called as a witness? She's called in to defend the boyfriend. She's called in, in other words, it's treated as a, he's defending, it's a classic situation. The most obvious, when you're representing criminal defendants in a case, the most obvious conflict you ever have is where you've got an older man and a younger woman and they're paired up and somebody comes in and says, I'm going to represent both of them. You say, wait a minute. What's going on? And who's doing everything? The man is. Wait a minute. That's an obvious conflict. But why is that a conflict if she's saying, well, he didn't do it and therefore the corporation didn't do it? How is that? Again, there are strategic decisions which were made, but those are separate questions than whether or not there's an actual direct conflict between your client and the individual. The answer to that is that strategy is secondary to the existence of the conflict. The arguments are there. Strategy might be relevant on the Strickland question, but is it relevant to the, what you're arguing, the actual conflict? Strategy, the choice of strategy by a conflicted counsel never obviates the conflict. The conflict is actual because the counsel doesn't even make the argument. He doesn't even make a Rule 29 argument before calling the girlfriend. He has no, there is, it is obvious in this case that the girlfriend is a sacrificial lamb to protecting the older man. This is an obvious case. There's no, sure she comes in. What's the purpose? He's using her to try to get the fellow off. And the point is that this is the type of case where it's, even despite all of that, there's still no evidence that anything he did with regard to these important counts, these harboring counts, was to benefit Grayson. It's something he was doing to pocket himself. Usually if you were going to benefit a company in a hiring, in an alien harboring case, it would be because you're using the aliens for the benefit of the company. It's not because you're using company resources to file a false application where you can then siphon money away, where the company loses money and you personally pocket money. Is there anything in the record that, before the lawyer moved to withdraw for sentencing, is there anything in the record that could have signaled to the district court that there was a potential conflict here? Well, there, other than the rule itself, other than— Other than Rule 44. But— The district court was burdened by a false representation, which the government took part in, that Geyer was the president of the company. Didn't Mr. Geyer agree to that? Again, again, false representation. But it's made by the government. This is a representation that's made by the government. The district court, in the trial, goes further and relies on—claims that Grayson is the owner of property involved. Again, this is—there is definitely the district court being misled. But that's—the error is in not following Rule 44. In other words, it's not supposed to be some other thing that triggers Rule 44. Rule 44 was violated. The government agrees to that. The question is, is there a potential conflict? Clearly a potential conflict of interest. Was she prejudiced? No Rule 29. No argument on this. I'm stuck here having to deal with her testimony rather than a Rule 29 argument that should have been made, that should have been granted. Clearly there's potential. But there's actual conflict. This is—it's a fundamental difference on the single most important counts in this case. This man is taking the money for himself. There's no benefit to the company whatsoever. It is never presented as an argument, again, to protect him. Of course it should have been seen in that way. Did the false statements affect it? Yes, the false statements affect it, but the government has to accept responsibility for that. They have a burden here also. Getting to these harboring counts, the government's argument that, oh, well, again, it doesn't matter because Geyer is Grayson—Geyer—that doesn't change anything. The whole point of having corporate liability is because you have an independent corporate existence that is actually being affected by this, that is, the purpose of the crime was to serve the master. The government acknowledges to some extent those facts, but, again, tries to collapse it in saying, well, if it was good for Geyer, it was good for the company. If you were to isolate it a little bit, what about the visa fraud? The visa fraud is, again, very clearly something that was done purely for Mr. Geyer. This is something—a pattern that he had engaged in personally for himself when he was married to somebody else, and almost all of this conduct occurs while he's married to somebody else. Well, it seems to me that if you're going anywhere, that might be one that you could isolate and point out what you just did. That's the only question I have here, is that maybe the visa fraud has any intent to do anything for Grayson. It seems that that might be something you could isolate, but that doesn't cover everything, for sure. No, it doesn't, but— And you probably don't want to. No, the harboring has an independent—that defense survives despite the conflict. I mean, that defense survived because there's simply no harboring here. The government keeps using this concept of prevailing wage. The district court, in its order, said prevailing wage. There was a big mistake going on here, which is the visa fraud had to do with trying to get workers to come in, promising you're going to pay them a specific wage for an H-2B visa worker. That had a term associated with prevailing wage, but that was not the prevailing wage for roofing workers in the community. That was just a prevailing wage for Geyer to commit his visa fraud. How do you get around this court's recent opinion in McClelland? McClelland is perfect for me, because in McClelland— You didn't cite it in your brief. I know, but because—and I'm not the best lawyer in the world, but I'm not— But you did argue it before the district court. You just didn't cite it for us. That's true. That's true. The advantage I have, though, is that I'm not conflicted, so I feel like I'm better than the others. So, in any event, McClelland, why is it good for us? In McClelland, you have the classic. You have the—they're hiding the person in the—they're hiding the people in the back. They're treating the alien employees differently than the other employees. You have the low-wage—let's see—you have the low-wage issue. Again, what's the wages here? The record shows the testimony of Garcia is $12 an hour. The government says, oh, that's below prevailing wage. Minimum wages—and they even say at one point in their brief it's below minimum wage. Minimum wage in Illinois is still $8.25 an hour. This is 2014. This fellow's getting $12 an hour. And there was never a suggestion—and it was so important to this compared to McClelland. When they asked him, well, where'd you go after this? When the people came in, oh, we went to another place. Well, where'd you go next? I went to Urbana. And I realized, well, I was getting charged less for real rent in Urbana. They were overcharging me at Grayson. They were overcharging me at—Mr. Geyer was overcharging me. That's not McClelland. McClelland is undercharging. So the whole thing doesn't work for the government. You have an economic rationale that is completely perfect for the rentals here. You have no concealment, no effort at anything other than renting. And that is what in Costello and what in McClelland they said was simply not enough. The three factors that the court pointed out in McClelland are not present here. And in fact, the opposite is present here. You don't have undercharging of the rent as a benefit. You have overcharging. You have gouging of the people for the rent. And they just—you don't have them underpaid. You have them paid 50% more than minimum wage. You don't have them not paid for work. They would work as many hours as they wanted to. They all got paid for every hour they worked. People were happy to work there. And you don't have an exclusive treatment of people differently. There were legal workers rented to and illegal workers rented to throughout the period here. This is not like McClelland or Costello. The other fundamental problem with the case is that it's treated as—differently than other cases because there was so much reliance on the plea. And again, the plea is fundamentally defective. The crimes charged are not crimes. There is no such thing as those crimes. They were not crimes when they were at the plea. They're not crimes when they're in the indictment. And yet they form the basis for much of the findings by the district court. How can you say that though when the statute itself that they were charged with specifically provides for a term of imprisonment? It's not a felony, but how can you say it's—they're not crimes? They were not—what was charged was not a crime. There is a crime called engaging in a pattern and practice. The elements of that pattern and practice have never actually been defined by this court. In other words, in some of the more well-defined statutes, you have a pattern and practice and you know that there has to be X number of violations of a statute in order to have an offense. There is such a crime. But there is not what was charged in this case, which is hired an alien as part of a pattern. That is not an offense. And it's simply a misunderstanding by the government that—I don't know where it came from, but it's not an offense. But it has multiple problems. One, you completely eliminate a focus on the defining of what a pattern and practice is. You allow the defendant to believe he's guilty by hiring one alien and then repeatedly hiring the same alien. In the problem in this case, you allowed Grayson—they allowed Grayson to be convicted for conduct that occurred in 2008, before Grayson—four years before Grayson exists, because maybe there was a pattern back then and then there was a hiring later on. So you have a fundamental misapprehension of what is the violation. There is no such thing as a criminal violation for hiring of aliens. There isn't. What was the violation as far as—I don't even know how many of the visas they got. Was it over 100? The visas? The visas, there was multiple. First they have the two counts of Geier before Grayson exists, then they have two counts after Grayson exists, and I think they added up to maybe 200. Yeah, 200 people. But none of these people came—these people don't come to work for anybody. No. But these little—whatever you want to call it, HB2, what is it called? H2B, I think. Yeah, that's valuable. Apparently that was—they were selling those and people just had that, that got them a credential to do certain things, and I don't—I really don't like the overlap between the corporation or whatever it is and him individually, but clearly that is a huge part of this enterprise if you want to call it that. Maybe you don't. Again, those—it can't—it's a problem relating to the confusion in the case because none of those people are part of any hiring by Grayson. If I could reserve the rest of my time. Yes, you may. Thank you. Ms. Boyle? Good morning. May it please the Court, my name is Catherine Boyle on behalf of the United States. The corporate defendant here, Grayson Enterprises, essentially challenges the government's entire case from indictment to the evidence at trial to forfeiture. Its claims are meritless. I'd like to first discuss, as we spent a lot of time on earlier, the challenge to Mr. Grayson's joint representation. The government agrees that a Rule 44 hearing regarding joint representation should have been held, but Judge St. Eve, as you pointed out, in the absence of an actual conflict, a failure to conduct that Rule 44 hearing does not require reversing a jointly represented defendant's conviction. It's clear from the record in this case that Grayson's Sixth Amendment right to conflict free counsel was not violated because no actual conflict of interest existed between Grayson and Geier. Under the actual conflict framework, a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. If counsel operated under an actual conflict, prejudice is presumed and the defendant's argument prevails if there is any adverse effect with the attorney's performance. Here Mr. Geier was an authorized corporate representative for Grayson and he was therefore able to object on Grayson's behalf. He failed to do so. And not only does it appear in this case that there was no conflict, Grayson and Mr. Geier's interests were nearly perfectly aligned. Mr. Geier and Ms. Young created Grayson Enterprises Incorporated, doing business as Geier Roofing to quote, step into Geier Construction's operations. Although Ms. Young was the nominal president for Grayson, the evidence overwhelmingly showed that Mr. Geier remained in charge. Ms. Young repeatedly testified at trial that she had nothing to do with and knew nothing about the business and that Mr. Geier was the one in charge. Further, it's not just the evidence at trial, which defense counsel kept pointing out she had been brought in to testify on behalf of Mr. Geier. There's also documentary evidence throughout the record. There's emails between Ms. Young and an attorney involved in the visa application process. Is that evidence something the court can consider when determining the question of whether or not he had the authority to enter into the plea on behalf of the company? The evidence, the documentary evidence in the record? Evidence that was not available to the court at the time that she took the plea. So at the time that, one of the objections here is that at the time the district court took the plea, she did not make the appropriate determination that Mr. Geier was authorized to take that plea or enter into that plea on behalf of Grayson. Yes. You have identified in your brief additional evidence that was not before the district court at that point. Can we consider that subsequent evidence in making that determination or does it have to be determined based on what she knew at the time of the plea? Well, I think what we're looking at here are sort of two issues. First of all, we're looking at whether Mr. Geier was an authorized representative for purposes of the plea and then we're also looking at whether there was an actual conflict. Correct. And I'm talking about the former. Yes. So I think that we don't even have to get into the documentary evidence to know that Mr. Geier is an authorized representative. A question we might want to ask here is, if not Mr. Geier, who is the authorized representative for Grayson? The only other person is Ms. Young. Ms. Young was completely aware of the criminal proceedings. She testified at trial on behalf of Mr. Geier and Grayson and I'm certain we'd be seeing on appeal another argument if the nominal president who claimed to have no decision-making power was the one to enter a plea on behalf of Grayson. There were only two people involved here. Mr. Geier clearly was an authorized representative and Ms. Young, as the district court found, was aware of the criminal activity in Grayson. So I think the court had enough at that point and I think the court can consider now, sorry to return to your original question, I do think it's appropriate for the court to consider this documentary evidence in determining whether Mr. Geier was an authorized representative as a factual matter. There was a stipulation that was entered or a proposed stipulation where Mr. Geier admitted that he was the president of Grayson, but the one on the docket wasn't signed. Was there ever an executed copy of that proposed stipulation where Mr. Geier admitted he was the president? The one in the record is at record 26 from the district court record, if you know. Yes, Your Honor. I believe that was discussed at the change of plea hearing. That's why I'm asking if it was ever entered. I don't know that it was, Your Honor. I apologize. But not to my knowledge, no. And I just note further, in light of this potential actual conflict, the district court also found that Ms. Young, the only other person involved in Grayson, gave materially false testimony in defense of Mr. Geier and Grayson, which further demonstrated her complicity as the only other person with a potential interest in this corporation. I also want to note that in an attempt to prevail under that potential conflict framework, Grayson argues that it was prejudiced by entering a guilty plea to unlawful employment of aliens and suggests that the plea was not in its best interest because as a corporation it didn't face any prison time. That argument just doesn't hold water here. First of all, corporations frequently plead guilty even though you can't put a corporation in prison. Corporations don't face prison time as entities. And then there's also many reasons for an individual defendant to plead guilty even when they're not facing prison time. They might think it's the right thing to do. They might want to be currying favor with the judge. It also might be a strategy, which is what it appeared to be here, to show that by accepting responsibility for certain conduct and pleading guilty, you're therefore not guilty on other conduct that you're going to trial on. Did any of that affect Geier? I mean, did Geier get something special, whatever, with Grayson pleading guilty? Your Honor, it would be hard to say exactly what was in the district court judge's mind, but I'm not aware of any particular benefit to Mr. Geier from Grayson pleading guilty that I can think of immediately. Well, or the other way around, I guess. I mean, they're pretty well melded together. That's about the only way I can see it. But I was a little bit curious about the visa fraud. Yes, Your Honor. I was kind of confused with that, exactly what Grayson did or didn't do. Yes, Your Honor. And to address your first point, I think the reason that there was a guilty plea to counts 8 through 10 is, frankly, because it was so obvious that both Grayson and Geier were guilty of counts 8 through 10. In terms of your visa fraud question, I think that both Grayson, if you're asking, as you discussed earlier, if Grayson and Mr. Geier both benefited from the visa fraud, I would say absolutely. First of all, as we've discussed, there's really not a line between Mr. Geier and Grayson. Mr. Geier is Grayson for all practical intents and purposes. But we also have to remember here that both Mr. Geier and Ms. Young received, who were the only two people with interest in Grayson, received money in relation to this visa fraud. And then second, by committing this visa fraud and not taking these workers and then going with undocumented workers, Grayson ends up, by not taking these visas that were applied for, Grayson ends up with cheaper labor, and they are able to avoid paying state employment taxes. So I think that Grayson is a beneficiary of the visa fraud, not only because of its direct alignment with Mr. Geier, but also because in not taking these visa workers, Grayson Enterprises was able to then go and employ undocumented workers and got the benefits of that situation as well. Were there, was it 100 or 200? What's the number, if we know? So the first two counts of the indictment, Mr. Geier was the only one charged because he was operating under a different entity at that time, Geier Construction. And in 2011, there were, 93 were obtained, and then there was an extension for 20 workers. So that's a little, and then for Grayson, in 2013, 43 worker visas, about 43 worker visas were obtained. And in 2014, they had applied for and received approval for, initial approval for 71, but the State Department determined at that time that the application was fraudulent, so those visas were never actually issued. But it would be, I mean, over 100 was the goal for Grayson. So it's a significant number. And he's got a middleman, too. Pardon? He's got a middleman, which I didn't exactly understand how that transaction worked. Yeah, there was an individual named Kevin Daly who was selling the visas to foreign workers, is my understanding, and those were the two payments I was referring to, where there was a payment to Mr. Geier initially, and then later on, I think in 2013, there was a payment to Ms. Young, $4,000. What, $2,000 and $4,000, is that? And that's what we know of through wires. That's it. Pardon? That seems to be it. Well, that's what we know of through the wires. Without, this was a long trial and a long multi-year proceeding, but it's my understanding that it's considered, I don't want to speak out of turn, but I think it's possible that there were other exchanges. Was there any evidence of that at trial? I'm trying to remember exactly what was at trial and what was in briefing. I think that, I know there was evidence of somebody involved in selling visas, I believe coming to the Champaign-Urbana area. So I think the implication there, and again, I don't want to get too far out of turn here in what I'm saying exactly was stated. The implication there is, who knows what kind of exchanges could have taken place at that time, but again, I want to be careful. I'd also like to discuss Grayson's challenges to the indictment. Grayson waived its non-jurisdictional challenges to counts 8 through 10 of this indictment by pleading guilty. Grayson never showed any good cause for the delay in raising its multiplicity claim, nor does good cause exist. Any issue with the indictment being multiplicitous should have been apparent on its face on the day that it was issued. And Grayson also waived its other two claims, that the indictment failed to allege a pattern or practice, and that count 8 included an erroneous allegation. Case law indicates that where an indictment defect is one of omission, that indictment failed to allege the necessary facts and elements of the charged offenses, the defendant has not stated a jurisdictional error. But even if this court determined that these challenges were just forfeited, Grayson's claims should fail under plain error review. As to Grayson's claims that counts 8 through 10 were multiplicitous, Judge Saineev, I think you were the one who pointed out the plain language of Section 1324A shows that its authors anticipated the offenses would be charged in multiple counts because it prohibits hiring quote, an alien. It uses the singular term. Singular. Exactly. So, and there's another issue here where there would be no need in the penalty part to say that any term of imprisonment should not be more than six months for the entire pattern and practice. If you could only bring one count, you would just say the maximum penalty is six months. I think the reason they felt the need to limit it there is because if you have multiple, they're making clear that if you charge other counts, you cannot impose a sentence of more than six months total for this whole pattern and practice. And this court's criminal pattern jury instructions also support the idea that you can charge one undocumented individual in those counts. And frankly, despite, although Grayson's arguing here that this charging practice is unfair, it would be unfair that somebody could hire five undocumented workers or they could hire 400 and then you would treat it as a single act regardless. Grayson also argues the government wrongly believed that the hiring of any single alien could be charged as a pattern of hiring unauthorized aliens. This claim is also undermined by the plain language of the statute using the singular term and the shared language of counts 8, 9, and 10 in the indictment referred to the individuals charged in all three counts and said Grayson engaged in a pattern and practice of hiring for employment in the United States certain aliens whose identities are known to the grand jury as specified below, knowing that said aliens were unauthorized aliens with respect to such employment. So we think it properly alleged a pattern and practice in that shared language. Is that all part of the harboring? Pardon? Harboring. This is unlawful employment, but the elements are reflected in the harboring elements as well. They're overlapping elements between the unlawful employment of legal aliens and the harboring. Okay. And then also with the Hensley Road property, they said $3 million somewhere. Maybe that's just out of the picture at this point, but whatever it is, somebody got $3 million. Yes. And I think that the defendant, Grayson Enterprises, has alleged in this case that its due process was somehow violated in terms of this forfeiture. The forfeiture issues, as I'm sure Your Honors have realized, are somewhat windy. There was a lot of litigation over this. Some of the due process allegations Grayson Enterprises raised include the idea that it wasn't granted a hearing that it had asked for. I want to make clear that Mr. Guyer was the one who asked for that hearing, not Grayson Enterprises, at least as identified in the defendant's brief. And second of all, the reason that hearing wasn't held is because the relief that Mr. Guyer had taken share of the preliminary forfeiture order was then granted. So it wasn't that the court didn't hold a hearing and then ruled against Mr. Guyer. I thought he was told he was granted the extension to file a motion for hearing, but then never followed up with a motion for a hearing. So if you don't ask for it, you won't get it. That is actually correct initially. I'm referring to in the reply brief, Grayson Enterprises stated that at one point it says that the defense had asked for a hearing, and there was a later point after that extension had been granted and passed that in one of his filings, Mr. Guyer had one line saying we would request a hearing on this, and it was the issue of whether the preliminary order of forfeiture should be vacated. And the court ended up vacating the preliminary order of forfeiture, so it didn't hold a hearing because Mr. Guyer got the relief he asked, and it wasn't Grayson Enterprises in any case. But we don't believe there was any violation of due process here. Grayson Enterprises clearly had notice from the indictment that the government was seeking forfeiture of the Hensley Road property, and the reason that this went through the number of steps that it did and the sort of changes in what exactly was asked for was due to the sale of the property, which frankly we view as Grayson and Mr. Guyer's attempt at concealment of assets. Are there proceedings still going on over the property? I believe they are actually, so I think that that is still ongoing. And in any case here, you kind of have two potential scenarios. In one case, Grayson Enterprises is saying the property wasn't ours, it was quick leasings and it was leased to us, and it shouldn't be subject to this forfeiture, in which case what's the harm in any due process violation here? And additionally, you know, if it was Grayson's, and Grayson is guilty of harboring as the district court found and there's a nexus to this property, the property should be forfeited, should be forfeitable to the United States. You know, if you're finished, you're finished. There's no requirement to use up all your time. Do your honors have any further questions? Otherwise, we'll rest on the arguments in our brief. Thank you, Ms. Boyle. Thank you, Your Honor. With regard to the request for the hearing, the court treated the defendant's arguments jointly, and there was no suggestion in any way that this separated out Mr. Guyer's request. In fact, in the orders, it's quite clear that the court considered the arguments jointly. Does it say that there was no defense request for a hearing in this case, which the government did in its brief, was false? On the property, are you challenging the district court's determination of the nexus, or are you just challenging that you didn't receive fair notice, et cetera? I couldn't tell from your briefing if you were challenging the court's initial determination after the trial that a nexus existed. The court never went forward with that initial. But the court made that determination after trial. Are you challenging that determination? Yes, that was improper. You're saying that the district court's determination of a nexus between the harboring and the Hensley property was improper? It was procedurally improper. But not factually. Are you challenging the factual determination? No, because we never had a hearing. But you are now on appeal. I'm trying to figure out exactly what your arguments are. Let me finish, please. What your arguments are with respect to the property. Are you challenging the district court's factual determination after the trial that a nexus existed? If it were before the court, we would be challenging it. The court did not, it's not before the court. The question is, can you give a yes or no answer? It does, it does. But again, it assumes, it's a hypothetical. It's not a hypothetical. It assumes something that's not, it's not before the court. The court made that determination. The district court specifically made that determination. I can't tell if you are challenging the court's factual determination after the trial that a nexus existed, or if your arguments are strictly procedural in nature. Are you challenging the district court's factual determination after the trial that a nexus existed between the offense of conviction and the Hensley property? Yes or no, please. By requesting a hearing, we were contesting it. Yes. By requesting a hearing, we were contesting it. And that is all you have to do. But the point is the court vacated that order. The court vacated the initiative. The court did not vacate its nexus determination. The court vacated the preliminary order of forfeiture, but there was nothing that the court vacated the underlying determination of nexus. The underlying determination has no, there's no place in the law for that to fit in. In Rule 32.1, there absolutely is. There was an agreement at trial that we were not going to reach forfeiture issues until after trial and after the verdict. But the agreement was not that you weren't going to reach any forfeiture. It was that you weren't going to determine what property was subject to forfeiture, not that you weren't going to reach what courts always have to determine  That's simply not true. Well, then you're reading the entries different than I am. The whole matter of forfeiture was postponed until after the trial. The district court forgot about it, and she made a finding about nexus. At that point, the government, she asked the court. The court made the finding of nexus at the close of the trial. That's not forgetting about it. It's forgot that we agreed not to have it done until we have a hearing on it. That's the whole point. The whole point was the government asked the court, said we will not argue forfeiture now. We will put it off. Then the government is now coming on and taking the duplicitous position twice in this case that's saying we're somehow at fault because we never had a hearing on it. The government was the one who pushed it out of trial. The government was the one that said, no, you're not going to be put in this procedurally disadvantaged position, and now they're asking this court to doubly procedurally disadvantage us and to make arguments about things that we still have not had our hearing on. And that's completely fundamentally unfair. It violates the rules. It violates due process. It would put this court as an outlier among all courts in that regard. The fact that the district court simply made a mistake, but the point is when the district court made that mistake, the government said it doesn't matter because we're not asking for forfeiture. The district court has no sua sponte authority to impose forfeiture that the government is not seeking. No court is so held. If this court were to go in that direction, again, it would be the first court to so held.